## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: ARC INFLATORS PRODUCTS LIABILITY LITIGATION** | **MDL NO. 3051** |

## THE *BRITTON* PLAINTIFFS'[1] OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF GEORGIA FOR CONSOLIDATION PURSUANT TO 28 U.S.C. §1407

---

[1] The "*Britton* Plaintiffs" collectively refer to the following 15 named Plaintiffs: John Britton, Eva Jacinto, Celeste Felice, Glenda Dillon, Stephen Gearhart, Patricia Jones, Melissa Warren, Nicole Senkpeil, Eniko Gedo, Jeremy Young, Rhonda Hunt Muhammed, Kristen Luiz, Anthony Raspantini, Francine Lewis, and Matthew Kakol, who filed the first action. *See Britton, et al., v. ARC Auto., Inc., et al.*, No. 3:22-cv-03053-TLT (N.D. Cal. May 24, 2022), ECF No. 1.

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ................................................................................................. 1

II.     LEGAL STANDARD........................................................................................ 4

III.    ARGUMENT .................................................................................................... 4

     A.   Centralization Is Appropriate Because a Transfer Pursuant to Section 1404 Will Not Eliminate the Multidistrict Character of This Litigation ................................. 4

     B.   The Factors Strongly Favor the *Britton* Plaintiffs' Selection of the Transferee District................................................................................................................ 6

         1.   The Largest Number of Cases Pending ...................................................... 7

         2.   Where Discovery Has Occurred ................................................................. 8

         3.   Where Cases Have Progressed Furthest ...................................................... 8

         4.   The Site of the Occurrence of Common Facts............................................ 9

         5.   Where the Cost and Inconvenience Will Be Minimized ......................... 10

         6.   The Experience, Skill, and Caseloads of Available Judges..................... 11

         7.   The Location of the First-Filed Action ..................................................... 13

     C.   The Northern District of California Is the Most Appropriate Forum .................. 13

     D.   Alternatively, the Northern District of Illinois Is Another Appropriate Forum ... 15

     E.   The *Britton* Plaintiffs' Would Not Oppose Centralization in the Eastern District of Michigan ........................................................................................................... 16

     F.   Centralization in the Northern District of Georgia Is Inappropriate.................... 18

     G.   Centralization in the District of South Carolina Is Likewise Inappropriate ......... 19

IV.    CONCLUSION................................................................................................ 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
    201 F. Supp. 3d 1375 (J.P.M.L. 2016).....................................................................12

*In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prod. Liab. Litig.*,
    No. MDL 3026, 2022 WL 1053663 (J.P.M.L. Apr. 8, 2022)..................................11

*In re: Auto. Wire Harness Sys. Antitrust Litig.*,
    867 F. Supp. 2d 1349 (J.P.M.L. 2012).....................................................................17

*In re Baby Food Mktg., Sales Practices and Products Liability Litig.*,
    544 F. Supp. 3d 1375 (J.P.M.L. 2021).......................................................................5

*In re: Bank of Am. Credit Prot. Mktg. & Sales Pracs. Litig.*,
    804 F. Supp. 2d 1372 (J.P.M.L. 2011).......................................................................7

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
    609 F. Supp. 2d 1379 (J.P.M.L. 2009).....................................................................13

*In re: Boehringer Ingelheim Pharm., Inc., Fair Labor Standards Act (FLSA) Litig.*,
    763 F. Supp. 2d 1377 (J.P.M.L. 2011).......................................................................5

*Britton, et al., v. ARC Auto., Inc., et al.*,
    No. 3:22-cv-03053-TLT (N.D. Cal. May 24, 2022) ....................................... *passim*

*In re Broiler Chicken Grower Antitrust Litig.*,
    509 F. Supp. 3d 1359 (J.P.M.L. 2020).......................................................................7

*In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*,
    No. MDL 3040, 2022 WL 3134131 (J.P.M.L. Aug. 3, 2022) ...........................5, 17

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    273 F. Supp. 3d 1377 (J.P.M.L. 2017).......................................................................9

*In re Columbia River Dams Clean Water Act Litig.*,
    No. MDL 3027, 2022 WL 1053669 (J.P.M.L. Apr. 8, 2022)....................................4

*In re Compression Labs., Inc., Patient Litig.*,
    360 F. Supp. 2d 1367 (J.P.M.L. 2005).....................................................................14

*In re Covidien Hernia Mesh Products Liability Litig.*,
    481 F. Supp. 3d 1348 (J.P.M.L. 2020)....................................................................4, 5

*In re Delta Dental Antitrust Litig.*,
    433 F. Supp. 3d 1358 (J.P.M.L. 2020)....................................................................11

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.*
*Litig.*,
    412 F. Supp. 3d 1355 (J.P.M.L. 2019)....................................................................17

*In re Gen. Motors Corp. Air Conditioning Mktg. & Sales Pracs. Litig.*,
    289 F. Supp. 3d 1340 (J.P.M.L. 2018)....................................................................17

*In re: Incretin Mimetics Prof. Liab. Litig.*,
    968 F. Supp. 2d 1345 (J.P.M.L. 2013)......................................................................7

*Jophlin, et al. v. ARC Automotive, Inc., et al.*,
    Case No. 2:22-cv-02507-BHH (D.S.C. Aug. 1, 2022) ............................................20

*In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    396 F. Supp. 3d 1366 (J.P.M.L. 2019)....................................................................11

*In re Land Rover LR3 Tire Wear Prod. Liab. Litig.*,
    598 F. Supp. 2d 1384 (J.P.M.L. 2009)......................................................................7

*In re Local TV Advert. Antitrust Litig.*,
    338 F. Supp. 3d 1341 (J.P.M.L. 2018)....................................................................16

*In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*,
    543 F. Supp. 3d 1377 (J.P.M.L. 2021)....................................................................11

*In re: Midland Credit Management, Inc. Tel. Consumer Protection Act Litig.*,
    818 F. Supp. 2d 1377 (J.P.M.L. 2011)......................................................................7

*In re Packaged Ice Antitrust Litigation*,
    560 F. Supp. 2d 1359 *(2008)* ................................................................................18

*In re: Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*,
    846 F. Supp. 2d 1380 (J.P.M.L. 2011)......................................................................7

*In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.*,
    763 F. Supp. 2d 1374 (J.P.M.L. 2011)......................................................................6

*In re Recalled Abbott Infant Formula Prod. Liab. Litig.*,
    No. MDL 3037, 2022 WL 3134144 (J.P.M.L. Aug. 5, 2022) ...........................11, 15

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    904 F.Supp. 1407 (J.P.M.L. 1995)..........................................................................18

*In re: Roundup Prod. Liab. Litig.*,
    214 F. Supp. 3d 1346 (J.P.M.L. 2016)..................................................................7, 14

*In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada, on October 1,
2017,*
347 F. Supp. 3d 1355 (J.P.M.L. 2018)................................................................4

*In re Samsung Plasma Television Prod. Liab. Litig.,*
322 F. Supp. 3d 1380 (J.P.M.L. 2018)................................................................5

*In re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,*
949 F. Supp. 2d 1365 (J.P.M.L. 2013)..............................................................13

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.,*
949 F. Supp. 2d 1369 (J.P.M.L. 2013)..............................................................13

*Thomas, et al. v. ARC Auto., et al.,*
No. 22-cv-05067 (N.D. Ill. Sept. 16, 2022) ...............................................12, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
148 F. Supp. 3d 1367 (J.P.M.L. 2015)..............................................................10

**Statutes**

28 U.S.C. § 1407(a) ...........................................................................................4

**Other Authorities**

ADMIN. OFF. U.S. COURTS, Current Judicial Vacancies,
https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-
judicial-vacancies (last updated Sept. 22, 2022).............................................12

ADMIN. OFF. U.S. COURTS, United States District Courts – National Judicial
Caseload Profile (June 30, 2022),
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.
pdf ..........................................................................................................12, 18, 19

CHARLESTON AIRPORT, https://www.charleston-airport.com/ (Sept. 23, 2022),
https://www.charleston-airport.com/ ...............................................................20

DETROIT HISTORICAL SOC'Y, *America's Motor City*,
https://detroithistorical.org/detroit-historical-museum/exhibitions/signature-
exhibitions/america%E2%80%99s-motor-city (last visited Sept. 22, 2022)...........................17

Manual for Complex Litigation (4th ed. 2004) § 20.131....................................6, 19, 20

MEMPHIS INT'L AIRPORT, https://flymemphis.com/ (Sept. 23, 2022)...........................11

MOTLEY RICE LLC, *Mount Pleasant, South Carolina*,
https://www.motleyrice.com/location/south-carolina (Sept. 23, 2022) ......................8

Pub. Policy Inst. Cal., California's Population,
  https://www.ppic.org/publication/californias-population/ (last visited Sept. 22,
  2022) ...................................................................................................................................9

Statistics Report – Distribution of Pending MDL Dockets by District (Sept. 15,
  2022),
  https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_D
  istrict-September-15-2022.pdf ..........................................................................................13

U.S. Census Bureau, QuickFacts California,
  https://www.census.gov/quickfacts/CA (last visited Sept. 22, 2022) ........................9

U.S. Dist. Ct., N.D. Cal., District Judge Trina L. Thompson,
  https://www.cand.uscourts.gov/trina-l-thompson/ (last visited Sept. 22, 2022) ....................12

U.S. Jud. Pan. Mult. Lit., *Multidistrict Litigation Terminated Through
  September 30, 2021*,
  https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20FY%202021%20Re
  port%20Cumulative%20Terminated%20MDLs.pdf (last visited Sept. 22,
  2022) .................................................................................................................................11

*The Yearly Car Sales Report in the US Updated in 2022*, Axlewise (Aug. 25,
  2022), https://axlewise.com/car-sales-stats/ ...............................................................9

**Rules**

Federal Rules of Civil Procedure
  Rule 12(b)(2) ...................................................................................................................2, 9
  Rule 12(b)(6) ...................................................................................................................2, 9
  Rule 26(f) .........................................................................................................................2, 8

The *Britton* Plaintiffs[2] in *Britton, et al., v. ARC Auto., Inc., et al.*, No. 3:22-cv-03053-TLT (N.D. Cal. May 24, 2022) ("*Britton* Action"), who filed the first proposed class action seeking economic losses in connection with their purchase or lease of vehicles containing a defective toroidal stored gas hybrid inflator manufactured by Defendant ARC Automotive, Inc. ("Defective Inflators"), respectfully submit this opposition to Movants Lisa and Jimmy Mann's Motion to Transfer Actions to the Northern District of Georgia for Consolidation Pursuant to 28 U.S.C. § 1407 ("Motion").

## I.    BACKGROUND

*The Britton* Action concerns Defective Inflators, which have been installed in tens of millions of airbag assembly modules manufactured by Airbag Module Defendants,[3] which were then installed in vehicles manufactured by Original Equipment Manufacturer ("OEM") Defendants,[4] including Audi, BMW, Ford, General Motors, Porsche, and VW. The *Britton* Plaintiffs and the proposed class were unaware when they purchased or leased their vehicles that their vehicles contain Defective Inflators.

There are currently 12 actions pending in eight judicial districts. *See* Declaration of Niall McCarthy ("McCarthy Decl."), Current Schedule of Actions (**Ex. 1**). All actions allege that

---

[2] The "*Britton* Plaintiffs" collectively refer to 15 named Plaintiffs: John Britton, Eva Jacinto, Celeste Felice, Glenda Dillon, Stephen Gearhart, Patricia Jones, Melissa Warren, Nicole Senkpeil, Eniko Gedo, Jeremy Young, Rhonda Hunt Muhammed, Kristen Luiz, Anthony Raspantini, Francine Lewis, and Matthew Kakol.

[3] "Airbag Module Defendants" collectively refer to two Defendants: Joyson Safety Systems (f/k/a Key Safety Systems) ("Joyson") and Toyoda Gosei North America Corporation ("Toyoda Gosei").

[4] "OEM Defendants" collectively refer to 10 Defendants or six Defendant groups: Audi Aktiengesellschaft and Audi of America, LLC (together, "Audi"); Bayerische Motoren Werke Aktiengesellschaft and BMW of North America, LLC (together, "BMW"); Ford Motor Company ("Ford"); General Motors, LLC ("GM"); Dr. Ing. h.c. F. Porsche AG and Porsche Cars North America, Inc. (together, "Porsche"); and Volkswagen Aktiengesellschaft and Volkswagen Group of America, Inc. (together, "VW").

Defective Inflators manufactured by ARC Automotive, Inc. ("ARC") share a common, uniform defect. McCarthy Decl. ¶ 17. Specifically, they allege that the defect involved a faulty friction welding process. *Id.* The *Britton* Action, unlike the other actions, also alleges the defect involved the use of ammonium nitrate, a dangerous propellant chemical that can burn rapidly during unexpected pressure increases and cause over-pressurization during airbag deployment, and that the inflators lacked a pressure relief mechanism that could have mitigated the over-pressurization. *Id.*

The *Britton* Action is indisputably the most procedurally advanced. The *Britton* Action was filed in May 2022—over two months before the next action was filed. *See id.* ¶¶ 16, Current Schedule of Actions. The *Britton* Plaintiffs filed their First Amended Complaint on August 10, 2022. *Id.* ¶ 4. The *Britton* Plaintiffs have served all Defendants based in the United States at this time. *Id.* ¶ 8. The parties in the *Britton* Action submitted a Joint Case Management Statement on August 18, 2022, and appeared before the Northern District of California for the Initial Case Management Conference on August 25, 2022. *Id.* ¶ 9. The Northern District of California also set Rule 12(b)(2) and 12(b)(6) motion deadlines at the Initial Case Management Conference, which occurred five days before Movants filed their Motion on August 30, 2022. *Id.*

Furthermore, the parties in the *Britton* Action have engaged in multiple Rule 26(f) conferences. *Id.* ¶ 10. They submitted a Discovery Plan in connection with the Joint Case Management Statement. *Id.* ¶ 11. The *Britton* Plaintiffs also served discovery on Defendants as well as a document request on the National Highway Traffic Safety Administration (NHTSA). *Id.* ¶¶ 12-13. The parties in the *Britton* Action were also in the process of negotiating a stipulated protective order and stipulated order regarding the discovery of electronically stored information before Movants initiated proceedings before this Panel. *Id.* ¶ 14.

Counsel for the *Britton* Plaintiffs have been investigating this case for years and have retained industry and economic experts to support the facts set forth in their 84-page First Amended Complaint. *Id.* ¶ 7. The *Britton* Action is not only the first-filed action, it is the most comprehensive of the 12 actions. *Id.* ¶ 5. The *Britton* Action includes the most named Plaintiffs (15 class representatives), the most Defendants (13 OEM Defendants/six OEM Defendant groups and two Airbag Module Defendants), the highest number and widest variety of affected vehicles (six vehicle makes and 10 vehicle models), the most states (six states), and the most causes of actions (multiple nationwide claims and multiple state claims for each of the six states). *Id.*

Over two months after the *Britton* Plaintiffs filed the *Britton* Action, other plaintiffs began filing tag-along actions, including Movants. *See* McCarthy Decl., Current Schedule of Actions.[5] Movants filed the third action. *Id.* One law firm, Motley Rice LLC, filed six actions in four judicial districts, including three actions in the Northern District of Georgia, where Movants seek the Panel to centralize the actions. *See id.* ¶¶ 18, Current Schedule of Actions. Another law firm, Lieff Cabraser Heimann & Bernstein, LLP, filed two actions in two judicial districts. *Id.* ¶ 19. All actions are substantially similar to the *Britton* Action. *Id.* ¶ 17. Indeed, Movants admit that all actions "involve common questions of fact and core nucleus of similar allegations that will be the subject of discovery and a common focus of pretrial proceedings." Mot. at 7. The *Britton* Plaintiffs anticipate the filing of additional tag-along actions based on (1) their ongoing investigation, which suggests Defective Inflators were installed in 48 million to 51 million vehicles in the United States; and (2) the six tag-along actions filed since Movants initiated proceedings before the Panel. McCarthy Decl. ¶ 24.

---

[5] The *Britton* Plaintiffs note that Movants' Schedule of Related Actions submitted with their Motion is misleading in that it lists the six actions pending as of the filing of the Motion in non-chronological order (ECF No. 1-2).

3

## II.    LEGAL STANDARD

Civil actions pending in different districts are properly centralized where the actions involve "one or more common questions of fact," where transfer would serve "the convenience of parties and witnesses," and where pretrial consolidation would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Movants bear the burden of showing that centralization is warranted, and that burden is "heavier" where there are only a few actions, particularly those involving the same parties and counsel. *See In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada, on October 1, 2017*, 347 F. Supp. 3d 1355, 1357–58 (J.P.M.L. 2018) (denying centralization of 13 actions filed in eight districts); *In re Covidien Hernia Mesh Products Liability Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) (denying centralization where the plaintiffs in several actions shared counsel).

## III.    ARGUMENT

### A.    Centralization Is Appropriate Because a Transfer Pursuant to Section 1404 Will Not Eliminate the Multidistrict Character of This Litigation

The Panel has stated that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Columbia River Dams Clean Water Act Litig.*, No. MDL 3027, 2022 WL 1053669, at *2 (J.P.M.L. Apr. 8, 2022) (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). Where "a reasonable prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to Section 1407 centralization." *Id.* (quoting *In re 3M Co. Lava Ultimate Prods. Liab. Litig.*, 222 F. Supp. 3d 1347, 1347–48 (J.P.M.L. 2016)) (internal quotation marks omitted); *see also In re Baby Food Mktg., Sales Practices and Products Liability Litig.*, 544 F. Supp. 3d 1375, 1377–78 (J.P.M.L. 2021) (same).

4

The Panel has denied centralization in various cases where there are few actions involving the same counsel. *See, e.g.*, *Covidien Hernia Mesh Products*, 481 F. Supp. 3d at 1349 (denying centralization where the plaintiffs in five of the 12 actions shared counsel, and the plaintiffs in another two actions also shared counsel); *In re Samsung Plasma Television Prod. Liab. Litig.*, 322 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018) (denying centralization of three actions where the plaintiffs in all three actions were represented by the same counsel); *In re: Boehringer Ingelheim Pharm., Inc., Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (denying centralization of four actions where the plaintiffs in three actions shared counsel).

There are currently 12 actions in eight judicial districts, and plaintiffs in six actions share the same counsel, Motley Rice LLC. *See* McCarthy Decl. ¶¶ 20, Current Schedule of Actions. Motley Rice LLC represents plaintiffs in the three actions pending in the Northern District of Georgia, where Movants seek the Panel to centralize the actions. *Id.* ¶ 18. Plaintiffs in another two actions also share the same counsel, Lieff Cabraser Heimann & Bernstein, LLP. *Id.* ¶ 19. Given the limited number of actions, transfer under Section 1404 or the first-to-file rule may appear to be practicable and preferable to centralization. Centralization is more appropriate, however, because no "reasonable prospect" exists that Section 1404 or first-to-file motions will eliminate the multidistrict character of a litigation. *See In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, No. MDL 3040, 2022 WL 3134131, at *2 (J.P.M.L. Aug. 3, 2022) (citing *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379–80 (J.P.M.L. 2012)) (granting centralization given "the number of involved districts, the wholesale absence of any transfer activity, and the potential tag-along actions").

The *Britton* Plaintiffs support centralization because Section 1404 or first-to-file motions would not eliminate the multidistrict character of this litigation. The current number of tag-along actions filed to date by various counsel suggest that Section 1404 transfer motions would be futile. *See* McCarthy Decl., Current Schedule of Actions. Additionally, there is a high likelihood of additional tag-along actions, as demonstrated by the six tag-along actions filed since Movants initiated proceedings before this Panel on August 30, 2022. *See id.* ¶¶ 24, Current Schedule of Actions. Finally, Defendants have not initiated any transfer activity in any action. *Id.* ¶ 23. The Panel should therefore centralize this litigation because Section 1404 or first-to-file motions will not provide a reasonable prospect for eliminating the multidistrict character of this litigation.

**B.     The Factors Strongly Favor the *Britton* Plaintiffs' Selection of the Transferee District**

If the Panel finds centralization is warranted, the Panel does not use a single factor to select the transferee district. Manual for Complex Litigation (4th ed.) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214–215 (1977)). Instead, the Panel considers where the largest number of cases is pending; where discovery has occurred; where cases have progressed furthest; the site of the occurrence of the common facts; where the cost and inconvenience will be minimized; and the experience, skill, and caseloads of available judges. *Id.*

Moreover, the Panel has stated that it is appropriate to give "the first-filed criterion some weight in selecting a transferee district[.]" *In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (citing *In re: Halftone Color Separations ('809) Pat. Litig.*, 547 F. Supp. 2d 1383, 1384 (J.P.M.L. 2008)). The location of the first-filed action bears weight where it is significantly advanced or where substantial time passed before the subsequent complaints were filed. *In re: Portfolio Recovery Assocs., LLC, Tel. Consumer Prot.*

*Act Litig.*, 846 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011); *In re: Midland Credit Management, Inc. Tel. Consumer Protection Act Litig.*, 818 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011); *see also In re: Incretin Mimetics Prof. Liab. Litig.*, 968 F. Supp. 2d 1345, 1347 (J.P.M.L. 2013). This Panel has transferred various cases to the transferee district where the first-filed and relatively most procedurally advanced action is pending. *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020); *In re: Roundup Prod. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016); *In re: Bank of Am. Credit Prot. Mktg. & Sales Pracs. Litig.*, 804 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011); *In re Land Rover LR3 Tire Wear Prod. Liab. Litig.*, 598 F. Supp. 2d 1384, 1386 (J.P.M.L. 2009).

Altogether, the factors strongly favor the *Britton* Plaintiffs' selection of the transferee district: the Northern District of California or, alternatively, the Northern District of Illinois. The *Britton* Plaintiffs discuss each of these factors below.

### 1.    The Largest Number of Cases Pending

The *Britton* Action is the most comprehensive of the 12 actions. McCarthy Decl. ¶ 4. The *Britton* Action includes the most named Plaintiffs (15 class representatives), the most Defendants (13 OEM Defendants/six OEM Defendant groups and two Airbag Module Defendants), the highest number and widest variety of affected vehicles (six vehicle makes and 10 vehicle models), the most states (six states), and the most causes of actions (multiple nationwide claims and multiple state claims for each of the six states). *Id.* ¶ 5.

While there are three actions pending in the Northern District of Georgia, these actions share the same counsel, Motley Rice LLC. *See id.* ¶¶ 18, Current Schedule of Actions. Similarly, while there are three actions pending two districts in Tennessee, two of these actions also share Motley Rice LLC as counsel. *Id.* The Panel should disregard any argument that most of the actions are pending in the southeastern United States because Motley Rice LLC, which is

headquartered in South Carolina,[6] filed six of the eight actions pending in South Carolina, Georgia, Alabama, and Tennessee. *See* McCarthy Decl., Current Schedule of Actions.

### 2. Where Discovery Has Occurred

The discovery process has commenced in the *Britton* Action. McCarthy Decl. ¶ 10. The parties engaged in Rule 26(f) conferences on August 4, 2022 and on August 12, 2022. *Id.* They submitted a Discovery Plan on August 18, 2022. *Id.* ¶ 11. The *Britton* Plaintiffs also served a document request on NHTSA on August 18, 2022[7] and discovery on Defendants on August 26, 2022. *Id.* ¶¶ 12-13. The *Britton* Plaintiffs provided a draft stipulated order regarding the discovery of electronically stored information to Defendants on July 15, 2022. *Id.* ¶ 14. Defendants provided the *Britton* Plaintiffs with a draft stipulated protective order on August 10, 2022; the *Britton* Plaintiffs provided their edits thereto on August 12, 2022. *Id.* The parties in the *Britton* Action were in the process of negotiating these stipulated orders before Movants initiated proceedings before this Panel. *Id.*

### 3. Where Cases Have Progressed Furthest

The *Britton* Action has progressed the furthest because it was filed in May 2022—over two months before the next action was filed. *See* McCarthy Decl., Current Schedule of Actions. The *Britton* Plaintiffs filed their First Amended Complaint on August 10, 2022. McCarthy Decl. ¶ 4. The *Britton* Plaintiffs have served all Defendants based in the United States at this time. *Id.* ¶ 8. The *Britton* Plaintiffs were in the process of moving the court for an order authorizing alternative service on the four Germany-based Defendants when Movants initiated proceedings before this Panel. *Id.* The parties submitted a Joint Case Management Statement on August 18,

---

[6] MOTLEY RICE LLC, *Mount Pleasant, South Carolina*,
https://www.motleyrice.com/location/south-carolina (Sept. 23, 2022).
[7] NHTSA informed the *Britton* Plaintiffs that it is processing the request as a Freedom of Information Act (FOIA) request on September 7, 2022. *Id.*

2022, and appeared before the Northern District of California for the Initial Case Management Conference on August 25, 2022. *Id.* ¶ 9. At the Initial Case Management Conference, which occurred five days before Movants filed their Motion on August 30, 2022, the Northern District of California also set a Rule 12(b)(2) motion deadline of September 16, 2022 and a Rule 12(b)(6) motion deadline of October 31, 2022. *Id.*

Furthermore, counsel for the *Britton* Plaintiffs have been investigating this case for years and have retained industry and economic experts to support the facts set forth in their 84-page First Amended Complaint. *Id.* ¶ 7.

### 4.     The Site of the Occurrence of Common Facts

Based on the *Britton* Plaintiffs' ongoing investigation, Defective Inflators were installed in 48 million to 51 million vehicles in the United States. McCarthy Decl. ¶ 24. As of July 1, 2021, California has a population of 39.24 million people—the largest population of any state in the United States.[8] California often records the highest amount of vehicle sales by state at about two million sales a year.[9] Based on this data, California likely has more affected consumers and vehicles than any other state. The Panel has transferred two cases to a district in California for this reason, among others. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs. & Prod. Liab. Litig.*, 273 F. Supp. 3d 1377, 1379 (J.P.M.L. 2017); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 148 F. Supp. 3d 1367, 1369 (J.P.M.L. 2015).

Various Defendants argue that the Panel should centralize the actions in the Western District of Tennessee because Defendant ARC—which is named in all the actions—has its

---

[8] U.S. CENSUS BUREAU, QuickFacts California, https://www.census.gov/quickfacts/CA (last visited Sept. 22, 2022); PUB. POLICY INST. CAL., California's Population, https://www.ppic.org/publication/californias-population/ (last visited Sept. 22, 2022).
[9] Matthew Hart, *The Yearly Car Sales Report in the US Updated in 2022*, AXELWISE (Aug. 25, 2022), https://axlewise.com/car-sales-stats/.

principal place of business in Tennessee. This argument ignores the fact that the 38 named Plaintiffs are in 10 states across the United States, and the 20 other Defendants have principal places of business across the United States and in foreign countries. McCarthy Decl. ¶¶ 20; *see also*, *infra*, at § III(B)(5). This argument also ignores that (1) the bulk of discovery in this litigation will be conducted electronically, and (2) ARC has manufacturing facilities across the world, including in Macedonia, China, and Mexico. *Id.* ¶¶ 15, 21(c).

### 5.     Where the Cost and Inconvenience Will Be Minimized

The actions taken together bring claims on behalf of 38 named Plaintiffs in 10 states against 21 Defendants in various states and countries. *See* McCarthy Decl. ¶¶ 20, Current Schedule of Actions. For example, several Defendants are foreign: Audi Aktiengesellschaft, Bayerische Motoren Werke Aktiengesellschaft, Dr. Ing. h.c. F. Porsche AG, and Volkswagen Aktiengesellschaft have their principal place of business in **Germany**, while Hyundai Motor Co. and Kia Corporation have their principal place of business in **South Korea**. *Id.* ¶ 21(a).

Moreover, Defendants Audi of America, LLC and Volkswagen Group of America, Inc. have their principal place of business in **Virginia**. *Id.* ¶ 21(b). Defendants Hyundai Motor America, Inc., Kia America, Inc., Mobis Parts America, LLC, have their principal place of business in **California**. *Id.* Defendants Joyson and Toyoda Gosei have their principal place of business in **Michigan**. *Id.* Defendant ARC has its principal place of business in **Tennessee**. *Id.* Given that both the named Plaintiffs and Defendants in the actions are geographically dispersed, and the availability of online proceedings, electronic communication, and e-discovery, this factor does not favor any district.

If geography is an important consideration for the Panel, the *Britton* Plaintiffs note that the Northern District of Illinois is the most centrally located among the districts with pending actions and "offers a convenient and readily accessible district." *In re Recalled Abbott Infant*

*Formula Prod. Liab. Litig.*, No. MDL 3037, 2022 WL 3134144, at *2 (J.P.M.L. Aug. 5, 2022).
While various Defendants argue for centralization in the Western District of Tennessee,
Memphis International Airport is not a major airport, as illustrated by the limited nonstop routes
to Memphis from other cities in the United States.[10]

### 6.  The Experience, Skill, and Caseloads of Available Judges

As this Panel has recognized in various recent transfer orders, both the Northern District
of California and the Northern District of Illinois have experienced and skilled judges. *See*, *e.g.*,
*In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, 543 F. Supp. 3d 1377,
1379–80 (J.P.M.L. 2021); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F.
Supp. 3d 1366, 1368 (J.P.M.L. 2019); *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prod.
Liab. Litig.*, No. MDL 3026, 2022 WL 1053663, at *1 (J.P.M.L. Apr. 8, 2022); *In re Delta
Dental Antitrust Litig.*, 433 F. Supp. 3d 1358, 1359–60 (J.P.M.L. 2020). Both districts have
extensive multidistrict litigation (MDL) experience. The Northern District of California and the
Northern District of Illinois have presided over 106 MDLs and 92 MDLs, respectively, of a total
of 1,587 MDLs that have concluded as of September 30, 2021.[11]

Regarding caseload, while the Northern District of California has a heavy caseload, it has
no judicial vacancies[12] and only 8.6 percent of civil cases are over three years old.[13] In contrast,
30.6 percent and 10.0 percent of cases in the Northern District of Georgia and the District of

---

[10] MEMPHIS INT'L AIRPORT, https://flymemphis.com/ (Sept. 23, 2022).
[11] U.S. JUD. PAN. MULT. LIT., *Multidistrict Litigation Terminated Through September 30, 2021*,
https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20FY%202021%20Report%20Cumulativ
e%20Terminated%20MDLs.pdf (last visited Sept. 22, 2022).
[12] ADMIN. OFF. U.S. COURTS, Current Judicial Vacancies, https://www.uscourts.gov/judges-
judgeships/judicial-vacancies/current-judicial-vacancies (last updated Sept. 22, 2022).
[13] ADMIN. OFF. U.S. COURTS, United States District Courts – National Judicial Caseload Profile
(June 30, 2022),
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

South Carolina, respectively—where Movants propose transferring the actions—are over three years old.[14] Furthermore, Judge Trina L. Thompson, to whom the *Britton* Action is assigned, is an experienced, skilled, and well-qualified judge who can steer this litigation on an efficient and prudent course.[15] She was a state court judge for almost 20 years before receiving her judicial commission for the Northern District of California in 2022.[16] She has not presided over any MDLs, though she has the benefit of being in the company of many other judges in the Northern District of California who are well-versed in the nuances of MDLs.

Likewise, the Northern District of Illinois can accommodate this litigation based on judicial resources. It has no judicial vacancies.[17] Judge Gary Feinerman, to whom the *Thomas, et al. v. ARC Auto., et al.*, No. 22-cv-05067 (N.D. Ill. Sept. 16, 2022) ("*Thomas* Action"), is assigned, is a capable judge with MDL experience. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016) (commending Judge Feinerman as "an able and experienced jurist"). He currently has no pending MDL dockets.[18]

The Panel has often recognized the desirability of transferring an MDL to a judge who "is not currently assigned to another such docket." *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009); *In re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 949 F. Supp. 2d 1365, 1366

---

[14] *Id.*

[15] U.S. DIST. CT., N.D. CAL., District Judge Trina L. Thompson, https://www.cand.uscourts.gov/trina-l-thompson/ (last visited Sept. 22, 2022).

[16] *Id.*

[17] ADMIN. OFF. U.S. COURTS, Current Judicial Vacancies, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last updated Sept. 22, 2022).

[18] U.S. JUD. PAN. MULT. LIT., MDL Statistics Report – Distribution of Pending MDL Dockets by District (Sept. 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2022.pdf.

(J.P.M.L. 2013); *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013). Transferring the actions to Judge Thompson or Judge Feinerman would serve this preference of the Panel.

### 7.    The Location of the First-Filed Action

The first-filed criterion favors the Northern District of California. The *Britton* Plaintiffs filed the first proposed class action seeking economic losses in connection with their purchase or lease of vehicles containing Defective Inflators in the Northern District of California on May 24, 2022—well before the next action was filed on August 1, 2022. *See* McCarthy Decl., Current Schedule of Actions. Consequently, the *Britton* Action is significantly more advanced than the other actions. *See*, *supra*, § III(B)(2)–(3). Indeed, among the actions, the *Britton* Action is the only action against certain Defendants, including Audi, BMW, Ford, Porsche, VW, and Joyson. *See* McCarthy Decl., Current Schedule of Actions.

### C.    The Northern District of California Is the Most Appropriate Forum

As the analysis of the factors demonstrate, the Northern District of California is the most appropriate transferee court. The *Britton* Action—the most comprehensive, the most procedurally advanced, and the first-filed action—is pending in the Northern District of California. *See*, *supra*, § III(B)(2)-(3). No party in any other action can argue that the district court has held an initial case management conference in that action or that the discovery process has commenced in that action. McCarthy Decl. ¶ 25. California has the largest population by state and, consequently, likely the largest number of affected consumers and vehicles than any other state. *See supra* § III(B)(4). The Northern District of California also has extensive complex and MDL experience, a moving caseload, and no judicial vacancies. *See*, *supra*, at § III(B)(6). Additionally, the Panel has recognized the Northern District of California as a conveniently accessible forum. *In re: Roundup Prod. Liab. Litig.*, 214 F. Supp. 3d at 1348 (finding that the

Northern District of California "has the necessary judicial resources and expertise to efficiently manage this litigation"); *In re Compression Labs., Inc., Patient Litig.*, 360 F. Supp. 2d 1367, 1368–69 (J.P.M.L. 2005) (finding the Northern District of California is "an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require").

To extent there is any question about the strength of California's factual connection to this litigation, the *Britton* Plaintiffs provide the following illustrative examples thereof:

- There have been seven known ruptures of Defective Inflators in vehicles across North America. One rupture occurred in a 2016 Audi A3 vehicle in California. No rupture occurred in Georgia or South Carolina, where Movants seek to transfer the actions;

- Defendant ARC has consigned more than 2,500 shipments that arrived through California ports. These shipments contained airbag inflator components, including initiators (which ignite the propellant), metal parts, and propellant. As the consignee, ARC takes possession of the goods at the port of entry and arranges for their transport to ARC's facilities;

- Defendant Joyson has an office in Sunnyvale, California;

- Defendant Toyoda Gosei has an office in Cupertino, California;

- The Audi and VW Defendants have eight production plants in California, including an Electronics Research Lab & Design Center in Belmont; a Technical Center in Oxnard; and an Audi/Porsche/VW Training Center in Eastvale;

- The BMW Defendants have several facilities in California, including the BMW Group Engineering and Emission Test Center in Oxnard; the BMW Technology Office USA in Mountain View; the Designworks studio in Newbury Park; and the Regional Parts Distribution Center in Redlands;

- Defendant Ford's California office is in Palo Alto. Ford has at least three executive offices in California that contribute to the design and development of Ford's vehicles;

- Defendant GM has 14 facilities, 203 authorized dealers, almost 500 employees, and over 300 suppliers in California alone. Among the GM facilities in California are the North Hollywood Design Center and the new Advanced Design Center; and

- The Porsche Defendants have a logistic complex for parts distribution in Ontario, California. They also have a Porsche Experience Center Los Angeles, a driving track that

14

is the headquarter of Porsche Motorsport North America. Porsche ensures through design and compliance testing, that the vehicles comply with U.S. regulations and safety standards, including emissions standards set by the California Air Resource Board. McCarthy Decl. ¶ 26.

California therefore has a strong connection and interest in this litigation, and the Northern District of California is the most appropriate transferee district for these actions.

### D. Alternatively, the Northern District of Illinois Is Another Appropriate Forum

To the extent the Panel is considering centralization outside of the Northern District of California, the Northern District of Illinois is another appropriate transferee court. The *Thomas* Action was filed in the Northern District of Illinois on September 16, 2022. *See* McCarthy Decl., Current Schedule of Actions. The *Britton* Plaintiffs would support centralization of this litigation in the Northern District of Illinois as an alternative to the Northern District of California. The Northern District of Illinois has extensive complex and MDL experience and no judicial vacancies. *See supra* § III(B)(6). As this Panel has noted, Illinois is a central forum in a conveniently accessible metropolitan area. *See, e.g.*, *In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 2022 WL 3134144, at *2 ("The Northern District of Illinois offers a convenient and readily accessible district."); *see also In re Local TV Advert. Antitrust Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018) (noting that the Northern District of Illinois "provides a geographically central and convenient location for the parties and witnesses").

To extent there is any question about the strength of Illinois' factual connection to this litigation, the *Britton* Plaintiffs provide the following illustrative examples thereof:

- The BMW Defendants operate the BMW Technology Corporation in Chicago; a regional distribution center in Minooka, Illinois that receives vehicles from BMW's manufacturing facilities, including those in Germany, and transports the vehicles throughout the United States; and a Central Region facility in Schaumburg, Illinois, that opened in 1979 and supports sales, aftersales, marketing, and finance for BMW vehicles in the central region of the United States. BMW has debuted vehicles at the Chicago Auto Show and has also sponsored multiple PGA golf tournaments in Illinois;

- Defendant Ford has operated its Chicago Assembly Plant since 1924. It also operates the Chicago Heights Stamping Plant and recently opened a materials handling plant in Chicago. A 2010 press sheet about Ford's connections to Chicago touted that it had 173 authorized dealerships in Illinois at the time and employed thousands of workers in Illinois;

- Defendant GM operates three facilities in Illinois, has sold more than 102,000 vehicles in Illinois through more than 200 authorized dealers, and works with over 250 suppliers that are based in Illinois. GM's Illinois facilities include a Chicago Parts Distribution Center in Bolingbrook and a Central Regional Office in Naperville that is responsible for financial services, sales, service, and marketing for the region; and

- Defendants Audi and VW have a subsidiary, VW Credit, Inc., in Libertyville, Illinois, that provides financial services, customer service, and IT services for VW and Audi authorized dealerships. There are multiple Volkswagen and Audi authorized dealerships in the Chicago area alone, which also explains why Audi formed a partnership with the Chicago Cubs to own the naming rights to the Audi Club at Wrigley Field. Finally, both Audi- and VW-branded vehicles have had their world debuts at the Chicago Auto Show.

McCarthy Decl. ¶ 27.

Illinois therefore also has a strong connection and interests in this litigation, though not as strong as California. The Northern District of Illinois would be an appropriate transferee district for these actions in the alternative to the Northern District of California.

### E. The *Britton* Plaintiffs Would Not Oppose Centralization in the Eastern District of Michigan

Although no action is currently pending in the Eastern District of Michigan, the *Britton* Plaintiffs would not oppose centralization there. Detroit bears the nickname "Motor City" given its ties to the automotive industry.[19] The Panel has transferred numerous automotive-related cases to Michigan in recent years. *See*, *e.g.*, *In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 2022 WL 3134131, at *2 (involving allegations that certain Chrysler Pacifica vehicle models are prone to fire and explosion and that Chrysler's voluntary recall notice issued was

---

[19] DETROIT HISTORICAL SOC'Y, *America's Motor City*, https://detroithistorical.org/detroit-historical-museum/exhibitions/signature-exhibitions/america%E2%80%99s-motor-city (last visited Sept. 22, 2022).

inadequate); *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 412 F. Supp. 3d 1355, 1356 (J.P.M.L. 2019) (involving allegations that Ford falsely marketed and advertised the miles per gallon estimates for certain Ford vehicle models*); In re Gen. Motors Corp. Air Conditioning Mktg. & Sales Pracs. Litig.*, 289 F. Supp. 3d 1340, 1341 (J.P.M.L. 2018) (involving allegations concerning the design, manufacture, and performance of the air conditioners in several GM vehicle models); *In re: Auto. Wire Harness Sys. Antitrust Litig.*, 867 F. Supp. 2d 1349, 1350 (J.P.M.L. 2012) (ultimately involving 43 separate automotive parts cases and scores of automotive parts supplier defendants).

Michigan would be an appropriate transferee forum. There have been two fatalities involving Defective Inflators in vehicles, one in the United States and one in Canada. McCarthy Decl. ¶ 28. One fatality caused by a rupture of a Defective Inflator in a 2015 Chevrolet Traverse occurred in Michigan. *Id.* Moreover, the Eastern District of Michigan, like the Northern District of Illinois, is centrally located for Plaintiffs who reside throughout the United States and for Defendants, some of which have their principal place of business in Michigan (*e.g.*, Ford, GM, Joyson, Toyoda Gosei). *Id.* It is conveniently located and readily accessible. *See In re General Motors Corp. Air Conditioning Mktg. & Sales Prac. Litig.*, 289 F.Supp.3d 1340, 1341 (J.P.M.L. 2018) ("this district offers a readily accessible and convenient transferee forum"); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F.Supp. 1407, 1408 (J.P.M.L. 1995) (granting centralization in the Eastern District of Michigan even though "that district was not suggested by any of the parties" because it "provides a geographically central location for this nationwide litigation"). Additionally, the total number of actions filed per judgeship last year in the Eastern District of

Michigan was only 271, far below both the national average of 594 filings per judgeship.[20] This

provides additional support for selecting Michigan as the transferee district. *See, e.g.*, *In re*

*Packaged Ice Antitrust Litigation*, 560 F. Supp. 2d 1359, 1361 (2008) (citing the Eastern District

of Michigan's "favorable caseload conditions" in selecting it as the transferee forum).

### F. Centralization in the Northern District of Georgia Is Inappropriate

Movants argue that the Northern District of Georgia is the "ideal transferee forum"

because it (1) "provides a convenient and easily accessible location for a geographically

dispersed litigation" and (2) "has both the capacity and experience to handle this MDL

litigation." Mot. at 10–13. These arguments are boilerplate.

*First*, the Northern District of Georgia is no more convenient or accessible than the

Northern District of California or the Northern District of Illinois. Each of these three districts

are in or near metropolitan areas. Movants' assertion that the Northern District of Georgia is

"within driving distance of ARC's Tennessee business, making it convenient for out of state

witnesses, litigants, and counsel without the need of connecting flights[,]" should be rejected.

Mot. at 11. ARC is only one of over two dozen Defendants in this litigation, and close proximity

to ARC's headquarters is not critical. ARC has manufacturing facilities across the world,

including in Macedonia, China, and Mexico. McCarthy Decl. ¶ 21(c). Indeed, ARC stated the

relevant evidence in these actions is not likely to come "from anywhere in Georgia" (ECF No. 23

at 6). Defendants are geographically dispersed throughout the United States and the globe. *Id.* ¶

21. No Defendant has a principal place of business in Georgia. *Id.* ¶ 22. Conversely, several

Defendants have significant offices in California (*see supra* § III(C)), and four Defendants have

---

[20] ADMIN. OFF. U.S. COURTS, United States District Courts – National Judicial Caseload Profile
(June 30, 2022),
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

their principal place of business in Michigan (*see supra* § III(D)). In any event, geography should be of little or no import as this is a class action based on economic losses in connection with Plaintiffs' purchase or lease of vehicles, which means that the bulk of discovery in this litigation will be conducted electronically. McCarthy Decl. ¶ 15.

*Second*, the Northern District of Georgia is no better equipped than the Northern District of California or Northern District of Illinois to handle a complex docket. The Northern District of California has 14 judges, and the Northern District of Illinois has 22 judges, both of which are more than the 11 judges in the Northern District of Georgia.[21] The Northern District of Georgia fails to meet any of the factors considered by the Panel in selecting a transferee court.[22]

### G.    Centralization in the District of South Carolina Is Likewise Inappropriate

Movants argue that, alternatively, the District of South Carolina, Charleston Division, is "well-suited to manage the demands" of this action because (1) "the Charleston International airport is a short drive to the Charleston Division courthouse and lodging in South Carolina is readily available[,]" and (2) the docket conditions of the District of South Carolina are advantageous. Mot. at 13–14.

*First*, as with Movants' argument in support of the Northern District of Georgia, the facts that the Charleston International Airport is a short drive to the Charleston Division courthouse and lodging in South Carolina is readily available are of no import and should be rejected. Charleston International Airport is a smaller airport with more limited flight options than airports situated in or near metropolitan areas.[23] Additionally, the *Britton* Plaintiffs reasonably anticipate

---

[21] ADMIN. OFF. U.S. COURTS, United States District Courts – National Judicial Caseload Profile (June 30, 2022),
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.
[22] Manual for Complex Litigation (4th ed.) § 20.131 (2004).
[23] CHARLESTON AIRPORT, https://www.charleston-airport.com/ (Sept. 23, 2022),
https://www.charleston-airport.com/.

that the bulk of discovery in this litigation will be conducted electronically. McCarthy Decl. ¶ 15. Furthermore, no Defendant has a principal place of business in South Carolina. *Id.* ¶ 22.

*Second*, the docket conditions of the District of South Carolina do not tip the scale in favor of centralizing this litigation in South Carolina given that not a single Defendant is based in South Carolina, and South Carolina is not as convenient or accessible by out of state witnesses, litigants, and counsel as California or Illinois. *See supra.* The only connection to South Carolina is the seven named Plaintiffs who reside in South Carolina and filed *Jophlin*, *et al. v. ARC Automotive, Inc., et al.*, Case No. 2:22-cv-02507-BHH (D.S.C. Aug. 1, 2022) (an action filed over two months after the *Britton* Action). In contrast, the 15 named Plaintiffs in the *Britton* Action are from six different states and nevertheless chose to file in the Northern District of California, indicating that California is the most appropriate forum for them to litigate this matter. *See* McCarthy Decl., Current Schedule of Actions. Like the Northern District of Georgia, the District of South Carolina fails to meet any of the factors considered by the Panel in selecting a transferee court.[24]

## IV.    CONCLUSION

Accordingly, the *Britton* Plaintiffs respectfully request that the Panel centralize the actions in the Northern District of California or, alternatively, in the Northern District of Illinois, for coordinated or consolidated pretrial proceedings. Neither the Northern District of Georgia nor the District of South Carolina are appropriate transferee districts.

Date: September 23, 2022          */s/ Niall P. McCarthy*
                                   Niall P. McCarthy
                                   nmccarthy@cpmlegal.com
                                   Elizabeth T. Castillo

---

[24] Manual for Complex Litigation (4th ed.) § 20.131 (2004).

ecastillo@cpmlegal.com
Melissa Montenegro
mmontenegro@cpmlegal.com
Kevin J. Boutin
kboutin@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 692-3606

Matthew D. Schultz
mschultz@levinlaw.com
William F. Cash
bcash@levinlaw.com
Scott Warrick
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN, BARR
& MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140
Fax: (850) 436-6066

R. Frank Melton, II
melton@newsomelaw.com
C. Richard Newsome
Newsome@newsomelaw.com
William C. Ourand, Jr.
ourand@newsomelaw.com
**NEWSOME MELTON, PA**
201 S. Orange St., #1500
Orlando, FL 32801
Tel: (407) 280-1433
Fax: (407) 648-5282

Courtney L. Davenport
courtney@thedavenportlawfirm.com
**THE DAVENPORT LAW FIRM, LLC**
18805 Porterfield Way
Germantown, MD 20874
Tel: (703) 901-1660

*Counsel for Plaintiffs John Britton, Eva Jacinto,
Celeste Felice, Glenda Dillon, Stephen Gearhart,*

21

*Patricia Jones, Melissa Warren, Nicole Senkpeil, Eniko Gedo, Jeremy Young, Rhonda Hunt Muhammed, Kristen Luiz, Anthony Raspantini, Francine Lewis, and Matthew Kakol & the Proposed Classes* in *Britton, et al., v. ARC Auto., Inc., et al.*, No. 3:22-cv-03053-TLT (N.D. Cal. May 24, 2022)